AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
THREE CELL PHONE DEVICES LOCATED AT THE FEDERAL BUREAU OF )
INVESTIGATIONS OMAHA FIELD OFFICE, 4411 S. 121 STREET, OMAHA, NEBRASKA )
)

Case No.  8:26MJ180

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A (INCORPORATED BY REFERENCE)

located in the _____ District of _____ Nebraska _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (INCORPORATED BY REFERENCE)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21:841, 846 | Possession with intent to distribute controlled substance; Conspiracy to distribute and possess with intent to distribute controlled substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____ #2157
*Applicant's signature*

☐ Sworn to before me and signed in my presence. _____ Cole Johannsen, FBI Task Force Officer
*Printed name and title*

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 5/12/2026 _____ _____
*Judge's signature*

City and state:  Omaha, Nebraska _____ Michael D. Nelson, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF THE SEARCH OF
THREE CELL PHONE DEVICES
LOCATED AT THE FEDERAL BUREAU
OF INVESTIGATIONS OMAHA FIELD
OFFICE, 4411 S. 121st STREET OMAHA,
NEBRASKA

Case No. 8:26MJ180

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Task Force Officer Cole Johannsen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      Your affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      Your affiant is an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510, in that, your affiant is an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.  Your affiant has been a Law Enforcement Officer with the Omaha Police Department (OPD) since August of 2012 and also a Task Force Officer with the Federal Bureau of Investigation (FBI) since November of 2024. Your affiant has investigative experience as it pertains to burglaries, assaults, homicides, robberies, narcotics, illicit proceeds and weapons offenses. In your affiant's career with OPD, your affiant has investigated cases involving large-scale drug smuggling operations, and in connection with such cases, your affiant has participated

in the drafting and execution of search and arrest warrants. During basic Law Enforcement training, your affiant received specialized training in narcotics investigations and has been designated by the United States Attorney General to be empowered with Title 21 authority, which allows your affiant to seize narcotics and arrest subjects for violations of the Controlled Substance Act.

3.    In conducting your affiant's official duties, your affiant has participated in narcotics investigations of alleged criminal violations of the Controlled Substances Act. Throughout these investigations, your affiant has become familiar with the retail drug trade. Through these investigations, training and conversations with other agents familiar with narcotics trafficking and money laundering, your affiant has become familiar with the methods employed by individuals and organizations engaged in narcotics trafficking and money laundering. Through these narcotics investigations, your affiant has participated in the arrest of individuals involved in the smuggling, distribution, and sale of illegal narcotics. Through post-arrest interviews of individuals involved in the smuggling, distribution, and sale of illegal narcotics, your affiant has learned the various methods employed by drug dealers to import, distribute, and sell illegal narcotics in the United States. Through investigative experience, training, and conversations with other Law Enforcement Officers and Special Agents familiar with narcotics trafficking, your affiant has also become familiar with the use by drug traffickers of telephones to communicate; the patterns of activity of drug traffickers; the types and amounts of profits made by drug dealers; and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug distribution activities.

4.    In conducting your affiant's official duties, your affiant has participated in investigations involving purchases of controlled substances from suspected narcotics traffickers using confidential sources. Your affiant has participated in investigations involving the wire

2

communications interception of conversations, pursuant to court authorization. Your affiant has participated in the execution of search warrants for narcotics, proceeds, and documentary evidence of narcotics trafficking. Your affiant has conducted surveillance in connection with narcotics investigations. Through the course of these investigations, your affiant has personally interviewed confidential sources about their involvement in narcotic trafficking. Your affiant has also spoken with more experienced narcotics investigators with whom your affiant has worked concerning the practices of narcotics traffickers and the best methods to use in the investigations of narcotics trafficking organizations. Your affiant's training and experience as a Task Force Officer; your affiant's participation in the investigation of narcotics trafficking organizations; conversations with known narcotic traffickers; and conversations with other Law Enforcement Officers and Special Agents familiar with narcotics trafficking form the basis of opinions and conclusions set forth below, which your affiant draws from the facts set forth herein. Your affiant is familiar with narcotics traffickers' methods of operation, including, the distribution, storage, and transportation of narcotics. Your affiant is also familiar with narcotics traffickers' means of communications about drug trafficking to include utilizing their cellular telephones and other electronic devices to communicate about the sale, distribution, and possession of illegal substances. Your affiant has conducted investigations regarding the unlawful importation, possession, and distribution of controlled substances.

5.      Your affiant is familiar with the facts and circumstances described herein and makes this affidavit based upon personal knowledge derived from your affiant's participation in this investigation, conclusions he has reached based upon his training and experience, discussions with other federal and state law enforcement personnel familiar with this investigation, and upon information he believes to be reliable from the following sources:

A.      Oral and written reports about this investigation and other investigations that your

3

affiant received from federal agents and from state and local law enforcement agencies;

B.    Physical surveillance conducted by federal agents or local law enforcement agencies, that were reported to your affiant either directly or indirectly;

C.    Telephone records, toll records and subscriber information;

D.    Information developed from cooperating sources;

E.    Law enforcement databases; and

F.    Public records.

Unless otherwise noted, wherever in this affidavit your affiant asserts that a statement was made, the information was provided by special agents, other law enforcement officers, and confidential sources.

6.    The statements in this affidavit are based on your affiant's personal knowledge, and on information your affiant has received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known to me concerning this investigation. Your affiant has set forth facts that your affiant believes are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (manufacturing, distributing, dispensing, or possessing with the intent to manufacture, distribute, or dispense a controlled substance) and 846 (conspiracy to manufacture, distribute, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, are located within the **Subject Phone**. Your affiant has probable cause to believe that evidence, as described in Attachment B, of violations of criminal law, including violations of criminal law described above, will be located in the **Subject Phone**, as described in Attachment A.

4

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7.    This affidavit is submitted in support of a search warrant for the following device, which is currently located in law enforcement custody at the FBI Field Office located at 4411 S. 121st Street, Omaha, Nebraska:

    a.    One Apple iPhone inside a leather case, unknown/no visible model number, assigned an unknown telephone number due to the iPhone being locked, hereinafter referred to as **"Subject Phone #1"**.

8.    Hereinafter, your affiant will refer to **Subject Phone #1 as Subject Phone**. The **Subject Phone** is further described in Attachment A.  Affiant has probable cause to believe that the **Subject Phone** to be searched, as described in Attachment A, contains evidence, as described in Attachment B, of violations of federal law, including Title 21, United States Code, Sections 841(a)(1) (manufacturing, distributing, dispensing, or possessing with the intent to manufacture, distribute, or dispense a controlled substance) and 846 (conspiracy to manufacture, distribute, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance.

9.    The applied-for warrant would authorize the forensic examination of the **Subject phone** for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

10.    Over the course of several months members of the Omaha Police Department and the Federal Bureau of Investigation conducted a long term narcotics investigation into distribution of methamphetamine which led to the identification of Marcus MAGNESS as a possible drug dealer, or facilitator of drug trafficking.

**Cooperating Sources and Sources of Information**

11.     The Cooperating Source (CS-1) has been a confidential source with the FBI since March of 2025.  Prior to being a confidential source with the FBI, CS-1 had provided information which was proven reliable to the Omaha Police Department on multiple occasions for approximately six years.  CS-1 has provided and continues to provide accurate and reliable information and is believed to be credible.  Early in 2025 CS-1 approached law enforcement regarding a party who was known to traffic methamphetamine.  CS-1 advised law enforcement that CS-1 had moved or facilitated large quantity transactions of methamphetamine for the target for approximately 12 months.  CS-1 indicated he/she was approached by the target where the target persuaded CS-1 to start setting up transactions for the methamphetamine.  CS-1's criminal history includes two felony convictions in 2020 for Possession of a Controlled Substance.  The CS-1 also has more minor offenses such as disturbing the peace and shoplifting.  Although CS-1 does have a criminal history, CS-1 has proven to be a credible source in this and other investigations.

12.     During the month of March 2025, the Greater Omaha Safe Streets Task Force (hereinafter, "GOSSTF") began an investigation into the distribution of Methamphetamine in Omaha, Nebraska, which led to the identification of Marcus MAGNESS of Omaha, Nebraska as a possible drug dealer, or facilitator of drug trafficking.

*March 3, 2025, Controlled Buy*

13.     On or about March 3, 2025, CS-1 contacted an Officer with the Omaha Police Department to report that MAGNESS was attempting to sell large quantities of methamphetamine. During a previous meeting with the Officer, CS-1 had identified MAGNESS by a DMV photograph dated December 14, 2023.  A few days later, the Officer and other

6

members of the GOSSTF met with CS-1. CS-1 and MAGNESS had previously agreed to meet to purchase one pound (16 ounces) of methamphetamine. CS-1 was to meet MAGNESS in the area of North 45th Street and Seward Street in Omaha, Nebraska where the transaction would occur.

14.     The Officers searched CS-1 and their vehicle, located no items of evidentiary value, and provided CS-1 with $2,500. The officer watched as CS-1 sent a Snapchat message to MAGNESS letting MAGNESS know that CS-1 was on the way to the meet location previously setup.  Upon completion of the message, a GOSSTF Task Force Officer outfitted CS-1 with audio and video equipment.

15.     CS-1 then drove to the area of North 45th Street and Seward Street where CS-1 parked and waited for MAGNESS to arrive.  Officers witnessed the vehicle, registered to MAGNESS, arrive in the area.  The vehicle parked behind the address of 4528 Seward Street where a male matching MAGNESS's description was seen exiting the vehicle and walked to the rear of the residence.  A short time later, the male reappeared, entered the vehicle and proceeded to the area of North 45th Street and Seward Street parking near CS-1's vehicle.  Once parked, CS-1 entered the front passenger seat of the vehicle where CS-1 provided MAGNESS with the $2,500 for the methamphetamine.  CS-1 exited the vehicle a short time later and returned to CS-1's vehicle.

16.     CS-1 drove to the predetermined meet location where officers obtained the audio and video equipment. In addition, CS-1 provided the Officer with 459 grams of suspected methamphetamine. The suspected methamphetamine was packaged in a clear gallon sized Ziplock style plastic bag.  Based on your Affiant's knowledge, training, and experience, the substance inside the gallon sized Ziplock bag appeared to be methamphetamine.

17.     CS-1 advised that once they arrived in the area of North 45th Street and Seward Street, they waited for MAGNESS to arrive.  A short time later MAGNESS arrived in the

7

vehicle and CS-1 entered the vehicle.  CS-1 advised MAGNESS was provided the $2,500 in exchange for the methamphetamine.

18.    Additionally, officers were able to maintain surveillance on the vehicle as it traveled in the direct area following the controlled buy.  The vehicle travelled through the area eventually landing at the QT gas station (4720 Hamilton Street Omaha, NE).  The vehicle parked at the gas pumps where MAGNESS exited the vehicle and walked into the store.  On March 7th, 2025, affiant officer was able to retrieve video footage from inside the QT gas station.  Affiant officer viewed and acquired the surveillance footage from the night of the controlled buy, March 3rd, 2025.  Affiant officer reviewed the footage and was able to positively identify MAGNESS as the driver of the vehicle.

19.    While debriefing CS-1, CS-1 received a phone call from MAGNESS from the number (531) 354-2446.  During the call, MAGNESS asked if CS-1 would have more people coming by today (to purchase additional methamphetamine).

20.    The suspected methamphetamine was sent to the Nebraska Public Service Laboratory (hereinafter, "NPSL") for testing which came back positive to contain methamphetamine of 94.2% +/- 5.8% purity with a minimum weight of 0.3936 kilograms.

*March 6, 2025, Controlled Buy*

21.    On or about March 6, 2025, CS-1 contacted members of the GOSSTF and OPD regarding MAGNESS' illegal narcotics sales. CS-1 advised that MAGNESS wanted to sell four ounces of methamphetamine for $700.

22.    On or about March 6, 2025, at approximately 5:45 P.M., investigators searched CS-1 and CS-1's vehicle locating nothing of evidentiary value. CS-1 was outfitted with

recording equipment and was given $700 of buy funds to purchase four ounces of methamphetamine from MAGNESS.

23.    Prior to the buy, CS-1 made a recorded telephone call to MAGNESS confirming the buy. CS-1 was to meet MAGNESS in the area of 45th Street and Seward Street.  During the call MAGNESS indicated he was just getting home to drop "her" off and was headed that way. This recorded call was also witnessed by affiant officer.

24.    At approximately 6:20 P.M., CS-1 made another call to MAGNESS who stated he was "coming down now".  CS-1 received a call from MAGNESS where MAGNESS indicated he was five minutes away and that he had to stop for gas.

25.    At approximately 6:53 P.M., MAGNESS arrived in a Black Jeep Cherokee.  The vehicle again pulled behind the address of 4528 Seward Street where a male matching MAGNESS' description was seen entering the garage.  A short time later MAGNESS re-entered the Jeep and proceeded to the area of CS-1's vehicle.  CS-1 entered the back seat of the Black Jeep where CS-1 provided MAGNESS with $700 in buy fund money in exchange for the four ounces of methamphetamine.

26.    The suspected methamphetamine was sent to the NPSL for testing which came back positive to contain methamphetamine of 94.2% +/- 5.8% purity with a minimum weight of 0.0988 kilograms.

*March 13, 2025, Controlled Buy*

27.    On or about March 13, 2025, CS-1 contacted members of the GOSSTF and OPD regarding MAGNESS' illegal narcotics sales. CS-1 advised that MAGNESS wanted to sell six ounces of methamphetamine for $1,050.

28.    On or about March 13, 2025, at approximately 4:00 P.M., investigators searched CS-1 and CS-1's vehicle locating nothing of evidentiary value. CS-1 was outfitted with recording equipment and was given $1,050 of buy funds to purchase four ounces of methamphetamine from MAGNESS.

29.    Prior to the buy, CS-1 made a recorded telephone call to MAGNESS confirming the buy. CS-1 was to meet MAGNESS in the area of 45th Street and Seward Street.

30.    At approximately 4:24 P.M., TFO JOHANNSEN noted a white Jeep Cherokee parked in the driveway of 4528 Seward St.  This vehicle was identified as the same vehicle rented by MAGNESS' girlfriend bearing Ohio plate starting with "KGG".

31.    At approximately 4:25 P.M., a male identified by TFO JOHANNSEN and Det. ULLERY as MAGNESS exited the garage of 4528 Seward Street and appeared to be making a phone call.  Simultaneously, CS-1 received a phone call from MAGNESS where CS-1 indicated he/she was here.

32.    MAGNESS then entered the white Jeep a short time later and proceeded to the area of North 45th and Seward Street where CS-1 was parked.  CS-1 then entered the white Jeep where MAGNESS was provided the buy fund money in exchange for the methamphetamine.

33.    The suspected methamphetamine was sent to the NPSL for testing which came back positive to contain methamphetamine of 94.2% +/- 5.8% purity with a minimum weight of 0.1472 kilograms.

10

*March 20, 2025, Controlled Buy*

34.     On or about March 20, 2025, officers again conducted a controlled buy of methamphetamine from MAGNESS.  During this controlled buy officer successfully purchased 114 grams of methamphetamine from MAGNESS utilizing CS-1.

35.     The suspected methamphetamine was sent to the NPSL for testing which came back positive to contain methamphetamine of 94.2% +/- 5.8% purity with a minimum weight of 0.0979 kilograms.

36.     In March of 2026 the aforementioned investigation was presented to a grand jury in the United States Court, District of Nebraska.  Following the Grand Jury a true bill was issued where MAGNESS was federally indicted for four counts of Distribution of Methamphetamine and an arrest warrant was issued.

37.     On March 26, 2026, officers located MAGNESS outside of his home at 15231 Norwick Drive where he was taken into custody and arrested on his federal warrant.  The **Subject Phone** was found to be in MAGNESS' possession at the time of his arrest.  The **Subject Phone** was transported to Omaha Police Central Headquarters where it was booked into evidence.  The following day the **Subject Phone** was checked out at Omaha Police Headquarters and transported to the Federal Bureau of Investigations Omaha Field Office at 4411 S. 121st Street Omaha, Nebraska.

38.     Based upon your affiant's experience and training, your affiant knows that drug traffickers commonly possess and use digital devices such as cellular telephones, which are similar in nature to the **Subject Phone**, in connection with their drug trafficking activities.  These devices typically store relevant information concerning their drug activities and drug associates including

11

addresses and telephone numbers, text messages, multi-media messages, the times and dates of incoming and outgoing calls and messages, and electronic files such as photographs, and videos.

39.     Your affiant knows from training and experience that members of DTOs commonly communicate with cellular telephones, to include text messaging and multi-media messaging. Your affiant also knows that members of DTO's commonly store phone numbers for their drug suppliers, co-conspirators and customers in their cell phones. The numbers stored in the target telephones and phone logs could have significance to ongoing narcotics investigations, as well as possible connections to potential targets in this case.

40.     In addition, your affiant knows from training and experience that because drug dealing is a very mobile business, it is necessary for persons involved in the drug business to use electronic communication devices, such as cellular telephones so that they can conduct their drug business at virtually any time without unnecessary delay.  Your affiant knows that these devices are capable of storing information, such as phone numbers and/or coded messages, which may lead to the identity of codefendants, coconspirators, and/or sources of supply.  Cellular telephones, in addition to being communication devices, are also storage devices for data.  Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and electronic messages from associates and photographs or videos of the primary user, associates, and co-conspirators.  The data inside cellular telephones is evidence of drug trafficking, demonstrates true ownership and control of the telephones, which are often registered to another person, and can be effectively used to corroborate the statements of witnesses.

41.     In addition, based on your affiant's training and experience, drug traffickers often have photographs or videos in cellular phones, of themselves, their coconspirators and property/assets purchased with drug proceeds.  These photographs and videos often contain

12

evidence of drug trafficking and evidence of the use of cash proceeds to make purchases of various assets, such as vehicles or jewelry. Further, these photographs and videos are useful to identify sources of supply, customers, associates, and co-conspirators of the primary user of the telephone as well as vehicles used or owned, places of operation or storage, and other evidence of drug trafficking activities.

42.    Based on the foregoing, there is probable cause to believe the data and information electronically stored within the **Subject Phone**, such as but not limited to details of past telephone contacts and records of calls made and received, text messages, multi-media messages, voice mails, internet browser history, types, amounts and prices of drugs trafficked, as well as dates, places and amounts of specific transactions, any information related to the sources of drugs (including names, addresses, phone numbers, or any other identifying information), any information related to schedule or travel, including geographic location information, photographs, videos, and audio files, and evidence of user attribution such as logs, phonebooks, and saved usernames and passwords, contain evidence of the commission of the above-listed violations, evidence concerning the fruits of the above described criminal activities, and/or evidence concerning the means of committing a violation of the above-listed statutes.  Accordingly, I request authority to allow technicians to search the **Subject Phone** for evidence such as that described above.

43.    The **Subject Phone** is currently in the lawful possession of the FBI. While the FBI might already have all necessary authorities to examine the **Subject Phone**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Subject Phone** will comply with the Fourth Amendment and other applicable laws.

44.    The **Subject Phone** is currently in storage at FBI at 4411 S. 121st Street in Omaha, Nebraska.  In my training and experience, I know that the **Subject Phone** has been

13

stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the **Subject Phone** first came into the possession of FBI.

## TECHNICAL TERMS

45.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, data, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on person calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be

14

retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. The storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains and records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The GPS consist of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

15

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

g. Memory Card: A memory card is utilized in many different types of devices (such as cellular phones, PDAs, GPS Units, etc.). These memory cards can contain any type of digital data to include pictures, keystroke information, telephone numbers, contact lists, calendars, etc. These items in and of themselves are portable and may be used in multiple devices.

16

46.     Based on my training, experience, and research, I am aware that the **Subject Phone**, listed above, requested to be searched, has the capabilities that allow it to serve as a wireless telephone and has the capabilities to include but not limited to, digital camera, portable media player, GPS navigation devices, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

47.     Based on my knowledge, training, and experience, I know that electronic devices which are similar in nature to the **Subject Phone** can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

48.     *Forensic Evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as a direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Phone** because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a work processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to search for "indicia of occupancy" while executing a search warrant at a residence.

17

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data storage on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

49.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

50.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcements possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the court to authorize execution of the warrant at any time in the day or night.

18

## CONCLUSION

51.    Your affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Phones** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

#2157

_____

Cole Johannsen
Task Force Officer
Federal Bureau of Investigation

Sworn to before me by telephone or other reliable electronic means:

Date:  May 12, 2026

City and State: Omaha, Nebraska

_____
Michael D. Nelson, U.S. Magistrate Judge

19

## ATTACHMENT A

The property to be searched includes:

A.    One (1) Apple iPhone, unknown/no visible model number, assigned an unknown telephone number due to the iPhone being locked inside a brown leather case, hereinafter referred to as **"Subject Phone"**.  **Subject Phone** is currently located in law enforcement custody at the Federal Bureau of Investigations, Omaha Field Office, 4411 S. 121st Street, Omaha, Nebraska.  **Subject Phone** was obtained by law enforcement on March 26th, 2026.  Two (2) photographs of **Subject Phone** are shown below:



## ATTACHMENT B

1.  All records on the **Subject Phone** described in Attachment A that relate to violations under Title 21, United States Code, Sections 841(a)(1) (manufacturing, distributing, dispensing, or possessing with the intent to manufacture, distribute, or dispense a controlled substance) and 846 (conspiracy to manufacture, distribute, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance), including:

20

a. Visual depictions of sent and/or received files (including but not limited to still images, videos, films or other recordings) or other computer graphic files;

b. Electronic copies of log files, to include but not limited to: emails, instant messaging, audio, still images, video recordings, chat logs, social media data, and digital cloud data stored on or about computer hardware. Computer hardware, that is, all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Any and all hardware/mechanisms used for the receipt or storage of the same, including but not limited to: any computer system and related peripherals, including data processing devices and software (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, hard drives, tape drives, disk drives, transistor-binary devices, magnetic media disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, USB storage devices and flash memory storage devices, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, scanners, digital cameras, optical readers, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, electronic tone generating devices, and related communications devices such as modems, cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

c. Electronic data contained in cellular phone, including any names, co-conspirators, associates, phone numbers, addresses, contact information, data, text, messages,

21

images, voice memos, voice mail, GPS or specific location information, maps and directions, calendar, photographs, videos, internet sites, internet access, documents, emails and email accounts, social media accounts, cloud storage accounts, or other information, ledgers, contained in the cellular phone internal, external or removable memory or memories, which includes any smart cards, SIM cards or flash cards;

d.  Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code;

e.  Documents, records, emails, and internet history (in documentary or electronic form) whether transmitted or received;

f.  Records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, including but not limited to social media accounts, cloud storage accounts, and email accounts, as well as any and all records relating to the ownership or use of the computer hardware, digital device and/or digital media account;

g.  Digital documents and records regarding the ownership and/or possession of the **Subject Phone**;

h.  During the course of the search, photographs of the **Subject Phone** may also be taken to record the condition thereof and/or the location of items therein;

i.  lists of customers and related identifying information;

j.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

k.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

22

l.   all bank records, checks, credit card bills, account information, and other financial records;

m.   all records of location data;

n.   all messages, including text messages and messages on applications, relating to drug distribution, drug possession, the purchasing of drugs, and drug sales;

o.   all records of contact lists and call records;

p.   all internet history relating to drug distribution, drug possession, the purchasing of drugs, and drug sales;

q.   Evidence of user attribution showing who used or owned the **Subject Phone** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

23

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| THREE CELL PHONE DEVICES LOCATED AT THE FEDERAL BUREAU OF INVESTIGATIONS OMAHA FIELD OFFICE, 4411 S. 121 STREET, OMAHA, NEBRASKA | ) ) ) ) ) | Case No.    8:26MJ180 |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Nebraska
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (INCORPORATED BY REFERENCE)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (INCORPORATED BY REFERENCE)

**YOU ARE COMMANDED** to execute this warrant on or before _____ May 25, 2026 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Michael D. Nelson _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    5/12/2026 2:51 pm    _____
_____
*Judge's signature*

City and state:    Omaha, Nebraska    _____
Michael D. Nelson, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>   8:26MJ180 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched includes:

A.    One (1) Apple iPhone, unknown/no visible model number, assigned an unknown telephone number due to the iPhone being locked inside a brown leather case, hereinafter referred to as **"Subject Phone"**. **Subject Phone** is currently located in law enforcement custody at the Federal Bureau of Investigations, Omaha Field Office, 4411 S. 121st Street, Omaha, Nebraska. **Subject Phone** was obtained by law enforcement on March 26th, 2026. Two (2) photographs of **Subject Phone** are shown below:



## ATTACHMENT B

1. All records on the **Subject Phone** described in Attachment A that relate to violations under Title 21, United States Code, Sections 841(a)(1) (manufacturing, distributing, dispensing, or possessing with the intent to manufacture, distribute, or dispense a controlled substance) and 846 (conspiracy to manufacture, distribute, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance), including:

20

a. Visual depictions of sent and/or received files (including but not limited to still images, videos, films or other recordings) or other computer graphic files;

b. Electronic copies of log files, to include but not limited to: emails, instant messaging, audio, still images, video recordings, chat logs, social media data, and digital cloud data stored on or about computer hardware. Computer hardware, that is, all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Any and all hardware/mechanisms used for the receipt or storage of the same, including but not limited to: any computer system and related peripherals, including data processing devices and software (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, hard drives, tape drives, disk drives, transistor-binary devices, magnetic media disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, USB storage devices and flash memory storage devices, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, scanners, digital cameras, optical readers, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, electronic tone generating devices, and related communications devices such as modems, cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

c. Electronic data contained in cellular phone, including any names, co-conspirators, associates, phone numbers, addresses, contact information, data, text, messages,

21

images, voice memos, voice mail, GPS or specific location information, maps and directions, calendar, photographs, videos, internet sites, internet access, documents, emails and email accounts, social media accounts, cloud storage accounts, or other information, ledgers, contained in the cellular phone internal, external or removable memory or memories, which includes any smart cards, SIM cards or flash cards;

d.  Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code;

e.  Documents, records, emails, and internet history (in documentary or electronic form) whether transmitted or received;

f.  Records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, including but not limited to social media accounts, cloud storage accounts, and email accounts, as well as any and all records relating to the ownership or use of the computer hardware, digital device and/or digital media account;

g.  Digital documents and records regarding the ownership and/or possession of the **Subject Phone**;

h.  During the course of the search, photographs of the **Subject Phone** may also be taken to record the condition thereof and/or the location of items therein;

i.  lists of customers and related identifying information;

j.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

k.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

l.   all bank records, checks, credit card bills, account information, and other financial records;

m.   all records of location data;

n.   all messages, including text messages and messages on applications, relating to drug distribution, drug possession, the purchasing of drugs, and drug sales;

o.   all records of contact lists and call records;

p.   all internet history relating to drug distribution, drug possession, the purchasing of drugs, and drug sales;

q.   Evidence of user attribution showing who used or owned the **Subject Phone** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

23